## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DR. JAMES L. RAINEY, III,
*IRS Employee (of 22 Years),*
*Internal Revenue Service,*

       Plaintiff,

       v.

DR. JANET YELLEN,
*Secretary, U.S. Department of Treasury,*
DARNITA TROWER,
*Senior Management Official/Manager,*
JAMES D. KEITH,
*Senior Management Official/Manager,*
GINA DAVIS,
*Management & Program Analyst,*
SHONDRAYA A. GRANT-LEVY,
*Supervisory Human Resources Specialist*
*(IR-01, Senior Manager),*
MICHAEL F. PITTS,
*Supervisory IT Specialist (IR-2210-01/Senior*
*Manager),*
LISA S. ROSENMERKEL,
*Senior Program Manager (IR-0340-01/Senior*
*Manager),*
TARA R. WELLS,
*Supervisory Operations Research Analyst (IR-*
*1515-01/Senior Manager),*
EDWARD F. EMBLOM,
*Supervisory Economist (IR-0110-01/Senior*
*Manager),*
BRYAN A. LAURIN
*Human Resources Specialist (GS-0201-13),*
and
MIHIR PATEL, *Director (GS-0340-15),*

       Defendants.

Civil Action No. TDC-22-0134

## MEMORANDUM OPINION

Plaintiff Dr. James L. Rainey, III, an employee of the Internal Revenue Service ("IRS"), has filed a civil action against Defendants Secretary of the Treasury Janet Yellen and ten IRS officials or employees consisting of Darnita Trower, James D. Keith, Gina Davis, Shondraya A. Grant-Levy, Michael F. Pitts, Lisa S. Rosenmerkel, Tara R. Wells, Edward F. Emblom, Bryan A. Laurin, and Mihir Patel (collectively, "the IRS Defendants"), alleging race discrimination, a hostile work environment, and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17 (2018).  Presently pending before the Court is Defendants' Motion to Dismiss or for Summary Judgment, which is fully briefed.  Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6.  For the reasons set forth below, Defendants' Motion will be GRANTED.

## BACKGROUND

Plaintiff Dr. James L. Rainey, III has worked for the IRS for approximately 22 years.  He holds a degree of Doctor of Management in Information Technology from Lawrence Technological University.  As of September 2019, his position at the IRS was as a "Supervisor Info Technology Specialist," which was a non-bargaining unit frontline manager position.  Joint Record ("J.R.") 1278, ECF Nos. 45–2 to 45–23.

Dr. Rainey had multiple problematic experiences at the IRS that he asserts are evidence of unlawful discrimination or retaliation.  In January 2019, at a time when IRS employees were not permitted to work because of a government shutdown, Darnita Trower, Dr. Rainey's senior manager, instructed him to log into his government-issued laptop computer and to allow software updates to run.  In February 2019, Trower asked Dr. Rainey about his preference for being addressed as "Dr. Rainey" and inquired about the research he did for his Ph.D. dissertation and the way he gathered his data.  Dr. Rainey perceived the conversation as questioning his academic

2

background, a concern which he considered to be validated when a subsequent performance evaluation written by Trower did not acknowledge his academic credentials and referred to him only as "James." Am. Compl. Ex. 1 at 24, ECF No. 12-1. Later in February 2019, Trower called Dr. Rainey after work hours. Although Trower initially discussed work-related matters with Dr. Rainey, she then asked him about the bathroom usage of one of Dr. Rainey's co-workers who is "a member of a protected class" and suggested that some other employees may be concerned about being assaulted by this individual. *Id.* Dr. Rainey was offended by the discussion and told Trower that he did not feel comfortable speaking about the issue.

In June 2019, Dr. Rainey asked to be moved out of his position as a frontline manager, which was a non-bargaining unit position, and return to his previous General Schedule ("GS")-14 bargaining unit position. According to Dr. Rainey, he was assigned to a non-bargaining unit position and told by Trower and another senior manager, James Keith, that if he did not accept that position, he would be placed on a Performance Improvement Plan with the potential to be downgraded to a lower-level position. Dr. Rainey ultimately transferred to another non-bargaining unit position, as an IT Program Manager, on September 29, 2019.

According to Dr. Rainey, in October 2019, Trower "slandered" Dr. Rainey's "character" in a performance evaluation. *Id.* at 22. On November 1, 2019, Dr. Rainey filed an appeal of this review, which resulted in changes to his evaluation. In that filing, in response to a question about additional complaints he had filed, Dr. Rainey stated that he had filed complaints with the Equal Employment Opportunity ("EEO") Office within the IRS and with the Office of Special Counsel. On November 5, 2019, Gina Davis, a Management and Program Analyst, reached out to Sajida Begum, Dr. Rainey's manager, and asked for Dr. Rainey's telework agreement to be revoked

because his performance evaluation rating was below the minimum level for eligibility for telework privileges.

Meanwhile, Dr. Rainey had been participating for several years in the IRS's Leadership Succession Review ("LSR"), a program for managers and employees interested in becoming managers through which the participants receive development opportunities, guidance, and evaluations aimed at developing leaders for the agency. On November 27, 2019, Dr. Rainey received an LSR rating of "Additional Development Required," which was lower than his previous LSR ratings in 2012, 2013, and 2017 of "Ready with Development." J.R. 19, 383, 398–99, 402.

Dr. Rainey asserts that since November 2019, he has unsuccessfully applied for 26 jobs within the IRS that, on average, have a salary of $15,000 more than the salary for his current job, including positions as a Senior Management and Program Analyst (Project Manager), Vacancy Announcement No. 19CE1-ITN0014-0343-15-DS; as a Management and Program Analyst (Technical Project Manager), Vacancy Announcement No. 20CS2-DCN077-0343-15-LP; and as an Information Technology Specialist, Vacancy Announcement No. 19CE1-ITB0040-2210-14-VA. According to Dr. Rainey, he was not interviewed for any of these positions, and the candidates selected were less qualified. Dr. Rainey contends that the hiring process was improper because the selection officials "were forced or pressured to make quick . . . decisions on job applications without fairly scrutinizing the full application packages of the candidates." Am. Compl. Ex. 1 at 30. In particular, they rated candidates based only on their resumes and did not fairly consider his full application package.

On October 30, 2019, Dr. Rainey contacted the United States Department of the Treasury ("Treasury") EEO Office, and he spoke with Lakiesha Thomas, an EEO Counselor, on November 29, 2019. On December 20, 2019, Treasury sent Dr. Rainey a Notice of Right to File a

4

Discrimination Complaint. The next day, on December 21, 2019, Dr. Rainey filed a formal complaint of discrimination with the Treasury EEO Office in which he alleged discrimination based on race, color, and sex, as well as unlawful retaliation. At Dr. Rainey's request, the EEO Office also accepted additional issues for investigation on January 29, 2020, February 28, 2020, March 2, 2020, and March 12, 2020. On July 27, 2020, the EEO Office notified Dr. Rainey that it had completed its investigation and provided him with its investigative report. Dr. Rainey then requested a hearing before an administrative judge ("AJ") of the United States Equal Opportunity Commission ("EEOC"). On October 19, 2021, the AJ granted Treasury's Motion for Summary Judgment and concluded that Dr. Rainey had not shown by a preponderance of the evidence that he was subjected to discrimination or retaliation as alleged in his EEO complaint. On November 11, 2021, Treasury entered a final agency action implementing the AJ's finding of no discrimination.

On January 18, 2022, Dr. Rainey filed the original Complaint in the present case. On March 23, 2022, Dr. Rainey filed the presently operative Amended Complaint. ECF No. 12. In the Amended Complaint, Dr. Rainey alleges Title VII claims of discrimination based on race, color, sex, and national origin (American) based on the failure to hire or promote him; a hostile work environment; and retaliation, arising from the following conduct or incidents: (1) the repeated failure to address him as "Dr. Rainey"; (2) the request in January 2019 that he run updates on his computer during a government shutdown; (3) the uncomfortable conversation with Trower about bathroom usage by a co-worker in February 2019; (4) Dr. Rainey's transfer on September 29, 2019 to a non-bargaining unit position when he had requested a return to a bargaining unit position; (5) the failure to hire Dr. Rainey for any of the 26 positions for which he applied beginning in November 2019; (6) Davis's threat to remove Dr. Rainey's telework privileges on

November 5, 2019; and (7) the lowering of Dr. Rainey's LSR rating on November 27, 2019.  Dr. Rainey has also submitted a letter requesting that certain filings be sealed, which the Court construes as a Motion to Seal.  ECF No. 47.

## DISCUSSION

In their Motion, Defendants argue that they are entitled to summary judgment because (1) the IRS Defendants are not proper defendants in a Title VII action; (2) Dr. Rainey did not exhaust administrative remedies as to the allegations that he did not include in his EEO complaint; and (3) he did not allege sufficient facts or provide sufficient evidence to support a finding of discrimination based on race, color, sex, national origin, or a hostile work environment, or a finding of unlawful retaliation.

## I.    Legal Standards

Defendants filed their Motion as a Motion to Dismiss or for Summary Judgment and have included numerous exhibits from the administrative proceedings.  Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint."  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded.  Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "Reasonable opportunity" has two requirements:  (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be

afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Here, Dr. Rainey has not filed such a declaration, has not argued that discovery is needed before resolving the Motion, and has submitted his own exhibits. Indeed, during an August 25, 2022 case management conference, Dr. Rainey confirmed that he did not need any additional witnesses or documents in order to litigate the Motion and that all the information he needed was included in the record. Accordingly, the Court concludes that it may consider the Motion as a Motion for Summary Judgment and will therefore consider the exhibits in the record in ruling on Defendants' Motion.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine"

only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.      Motion to Seal

In the Motion to Seal, Dr. Rainey requests that the Court seal exhibits that "further corroborate that [Dr. Rainey is] working in a hostile and toxic work environment" because he is unaware of "the law as it pertains to sharing personnel documents" issued to him. Mot. Seal at 1, ECF No. 47. Defendants have filed a Motion to Unseal for Limited Purpose, in which they state that Dr. Rainey never served Defendants with a copy of the Motion to Seal or the referenced documents and that, after Defendants requested copies, Dr. Rainey declined to send them to Defendants. Mot. Unseal at 1, ECF No. 49.

Local Rule 105.11, which governs the sealing of all documents filed in the record, states in relevant part: "Any motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." D. Md. Local R. 105.11. Because the attached records include personnel records and some documents relating to tax filings, the Court will grant the Motion to Seal but will also grant the Motion to Unseal for a Limited Purpose and direct the Clerk to send the referenced documents, ECF No. 48, to counsel for Defendants.

## III.     The IRS Defendants

As a preliminary matter, Defendants argue that the only proper defendant in this case is Secretary Yellen. Title VII provides that a federal employee "may file a civil action . . . in which civil action the head of the department, agency, or unit . . . shall be the defendant." 42 U.S.C. § 2000e-16(c). Accordingly, where Secretary Yellin is the head of the department in which IRS is

a component agency, and Dr. Rainey is an IRS employee, all claims against Defendants other than Secretary Yellen will be dismissed.

**IV.     Exhaustion of Administrative Remedies**

In the Motion, Defendants first argue that Dr. Rainey's claims asserted for the first time in this action and not previously included in the EEO complaint should be dismissed. "A federal employee who believes that his employing agency discriminated against him in violation of Title VII must file an administrative complaint with the agency." *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006). "The agency investigates the claim" and then, "if it concludes there was no discrimination, it issues a final agency decision to that effect." *Id.* At that point, the employee may appeal the agency's decision to the EEOC Office of Federal Operations or may instead "opt-out of the administrative process at this point by filing a de novo civil action." *Id.* at 416 & n.9. In such a civil action, the Title VII claims that plaintiffs may assert in federal court are "circumscribed by their administrative complaints," though plaintiffs may also bring claims that "are like or reasonably related to charges in the original administrative complaint" and "reasonably could have developed from the agency's investigation of the original complaint." *Stewart v. Iancu*, 912 F.3d 693, 706 (4th Cir. 2019).

Here, Dr. Rainey's EEO complaint alleged discrimination on the basis of race, color, and sex between June 2019 and December 2019, as well as unlawful retaliation after he engaged in protected EEO activity on November 1, 2019. The EEO complaint identifies the following incidents as establishing discrimination or retaliation: Dr. Rainey's September 29, 2019 transfer from his non-bargaining unit managerial position to another non-bargaining unit position; his October 2019 performance review which he appealed on November 1, 2019; the November 5, 2019 threat to terminate his telework agreement; the November 27, 2019 lowering of his LSR

9

Case 8:22-cv-00134-TDC   Document 50   Filed 08/08/23   Page 10 of 19

rating; and his December 20, 2019 non-selection for a position for which he applied. The EEO complaint, however, did not reference Dr. Rainey's present allegation in the Amended Complaint that he was subjected to national origin discrimination as an American, nor does it reference or relate to other conduct referenced in the Amended Complaint that extends back to 2008, including Dr. Rainey's present allegations that his LSR scores were lowered as early as 2010, that he was falsely accused of cheating on his timesheets in 2011, and that when he signed a disciplinary agreement to resolve those accusations, his work assignments changed in a negative way. Accordingly, to the extent that Dr. Rainey seeks to assert discrimination or retaliation claims based on these and other pre-June 2019 incidents, the Court finds that they must be dismissed for failure to exhaust administrative remedies.

In his memorandum in opposition to the Motion, Dr. Rainey references several events that have occurred since the beginning of 2022 when he filed the original Complaint in this case, including incidents in which he was not addressed as "Dr. Rainey," he was falsely accused of bad behavior, he had to file an internal EEO complaint because of a false accusation, his most recent performance evaluation score was lowered, and he was in meetings in which supervisors used the "n-word." Opp'n at 10–11, ECF No. 43. These incidents were not the subject of the original EEO complaint. According to Dr. Rainey, he filed a later internal EEO complaint relating to the incident involving the accusation of bad behavior, and he filed a currently pending appeal in connection with the lowering of his most recent performance evaluation score, but he has not claimed that those administrative processes have been completed. Because administrative remedies must be exhausted before a discrimination claim can be brought in federal court, *see Laber*, 438 F.3d at 416 & n.9, the Court will not consider any discrimination claims based on these specific incidents.

In contrast, a plaintiff may raise retaliation claims "for the first time in district court without the requirement that a plaintiff have exhausted his administrative remedies" because "retaliation claims almost always relate back to previously filed EEO charges." *Stewart*, 912 F.3d at 706. However, where Dr. Rainey has filed an internal EEO complaint and an appeal relating to the accusation of bad behavior and the lowering of his most recent performance evaluation score, and it appears that those processes are ongoing, they should be completed before these claims are to be considered here. In any event, regardless of whether exhaustion is required or has been completed, any retaliation claims relating to these 2022 incidents were not included in the Amended Complaint, and briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). *Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993). The Court will therefore not consider claims based on such incidents.

## V.    Discrimination

Liberally construed, Dr. Rainey's Amended Complaint alleges race or sex discrimination under Title VII based on (1) the failure of IRS personnel to refer to him as "Dr. Rainey" when the title was used to refer to others with doctoral degrees; (2) his September 29, 2019 transfer out of his non-bargaining unit frontline manager position to a different non-bargaining unit position; (3) his lower rating on his performance evaluation in October 2019; (4) the proposal to terminate Dr. Rainey's telework agreement on November 5, 2019; (5) the lowering of his LSR rating on November 27, 2019; and (6) the failure to hire Dr. Rainey for 26 positions for which he had submitted applications.

11

To establish a Title VII discrimination claim, the plaintiff must either demonstrate through direct or circumstantial evidence that discrimination motivated an adverse employment action or proceed through the approach espoused in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination; upon such a showing, the defendant must provide evidence of a legitimate, nondiscriminatory reason for the action; and if such evidence is presented, the plaintiff must demonstrate that the articulated reason was actually a pretext for discrimination. *Id.*

To establish a *prima facie* claim of race or sex discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside of the protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Defendants argue that most if not all of the race discrimination claims fail because Dr. Rainey has not provided sufficient evidence to establish an adverse employment action or differential treatment from others outside the protected class.

An adverse employment action is one for which "the terms, conditions, or benefits of . . . employment [are] adversely affected." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997). Such actions include those which result in "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). Most of the acts of alleged discrimination do not meet this standard. One of Dr. Rainey's primary complaints is that his manager would not refer to him as "Dr. Rainey" while non-Black employees with doctoral degrees were addressed with the title of Dr." Am. Compl. Ex. 1 at 14. While the Court does not believe that the use of

academic titles is necessary or customary in all work settings, it recognizes that differential treatment in how individuals of different races are addressed has historical roots in discriminatory treatment, is therefore inappropriate, and could reasonably cause offense. However, such conduct does not adversely affect the terms and conditions of employment within the meaning of Title VII and thus cannot serve as the basis for a viable race discrimination claim.

As for Dr. Rainey's claims of race or sex discrimination arising from his lower performance evaluation in October 2019 and his lower LSR rating on November 27, 2019, Dr. Rainey has not provided sufficient evidence to demonstrate that these lower ratings would have an impact on his pay or benefits, job title or supervisory responsibilities, or opportunities for promotion. These actions therefore do not constitute adverse employment actions as necessary to support a discrimination claim. Likewise, the proposal to terminate Dr. Rainey's telework agreement, which did not result in any change, does not qualify as an adverse employment action under Title VII.

Even to the extent that the transfer to a non-bargaining unit position or the lower performance rating and LSR rating could be deemed to be adverse employment actions, any discrimination claims based on these actions fail for the separate reason that Dr. Rainey has not put forth sufficient evidence to show that others from outside the protected classes were treated differently in relation to the transfer or rating processes. Likewise, although the failure to hire or promote Dr. Rainey into any of the positions he sought would constitute an adverse employment action, Dr. Rainey has not alleged sufficient facts or provided sufficient evidence to show that the decision was based on race or sex discrimination. He has not even identified whether the selected candidates were from outside the protected class. Accordingly, the Court will dismiss Dr. Rainey's race and sex discrimination claims under Title VII.

13

## VI.   Retaliation

Liberally construed, the Amended Complaint also alleges retaliation under Title VII based on the following incidents that occurred after Dr. Rainey filed his EEO complaint on November 1, 2019:  (1) the lowering of Dr. Rainey's LSR rating in November 2019; (2) the denial of a return to a bargaining unit position; (3) the proposal to terminate Dr. Rainey's telework agreement; and (4) the failure to hire Dr. Rainey for 26 positions for which he had submitted applications.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must present facts that establish that:  (1) the plaintiff "engaged in a protected activity"; (2) the employer took a materially adverse action against the plaintiff; and (3) "there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)).  A materially adverse action for purposes of a retaliation claim is one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

### A.   LSR Rating

Dr. Rainey asserts that shortly after he filed his initial EEO complaint on November 1, 2019 relating to his performance review, he was subjected to retaliation when his LSR ratings were lowered after that date.  Dr. Rainey's claim fails because the evidence does not support a finding of causation.  Although Dr. Rainey received his LSR rating on November 27, 2019, which was after the filing of his EEO complaint, the documentary evidence establishes that Trower completed the evaluation, including the lower rating of "Additional Development Required," on September 6, 2019, almost two months before Dr. Rainey filed his EEO complaint.  Because the rating was

established before Dr. Rainey filed his EEO complaint, the evidence does not show that the lower

LSR rating was the result of his protected activity. Accordingly, the Motion will be granted as to

Dr. Rainey's claim of retaliation based on his lower LSR ratings.

### B.     Transfer to Non-Bargaining Unit Position

Dr. Rainey also argues that his transfer to his current, non-bargaining unit position also

constituted unlawful retaliation. However, the record shows that Dr. Rainey's transfer was not a

materially adverse action. First, the record demonstrates that Dr. Rainey's transfer into his current

non-bargaining unit position was voluntary. By his own statement in his EEO complaint, Dr.

Rainey asked to leave his former managerial, non-bargaining unit position in June 2019. Then, as

stated in a September 6, 2019 email he sent to Trower and Keith, he decided that he would not

vacate his present managerial position unless he could transfer into a bargaining unit position.

However, at a meeting that same day to discuss the potential transfer, Trower explained that the

union was taking the position that transfer to a bargaining unit position was not possible without

opening the position up to a competitive hiring process. Dr. Rainey then had additional

discussions, including with the supervisor for the non-bargaining unit position who stated that he

did not intend to place Dr. Rainey on a Performance Improvement Plan and informed Trower and

Keith that he had decided to take the non-bargaining unit position. Because Dr. Rainey agreed to

the transfer, and the decision to transfer was made in September 2019, two months before he filed

his EEO complaint, the evidence does not support a finding of causation as required to sustain a

retaliation claim.

### C.     Telework Privileges

Dr. Rainey also alleges that Davis's proposal on November 5, 2019 that Dr. Rainey lose

his telework privileges constituted unlawful retaliation for his filing of the EEO complaint. The

15

record, however, shows that only a few hours after Davis sent the email suggesting that Dr. Rainey lose his telework privileges based on his lower performance rating, his manager, Begum, sent an email to Davis stating that she had "never seen any issue in [Dr. Rainey's] work" and requesting that he be allowed to continue to telework. J.R. 1607. As a result of Begum's email, the suspension of Dr. Rainey's telework privileges did not occur. Where Dr. Rainey never lost his telework privileges and where his supervisor promptly intervened to ensure that he could continue teleworking, the Court finds that the discussion about telework did not constitute a materially adverse action for purposes of a retaliation claim under Title VII.

### D.    Failure to Promote

Liberally construed, the Amended Complaint also asserts that Dr. Rainey experienced retaliation when he was not hired or promoted on 26 occasions after the filing of his EEO complaint in November 2019. This claim fails because Dr. Rainey has not provided sufficient evidence to support a finding of causation. He has provided very little detail about the specific positions he sought, how he was qualified for those positions, and how he was more qualified or a better candidate than the individual selected. He has not shown that each selecting official was aware of his EEO complaint at the time of the decision. Significantly, he has offered an explanation for the hiring decisions unrelated to retaliation. In the Amended Complaint, Dr. Rainey asserts that the managers who made the hiring decisions "were forced or pressured to make quick (rush to judgment) decisions on job applications without fairly scrutinizing the full application packages of the candidates" and did not have the opportunity "to thoroughly evaluate the full application packages of applicants like myself," which "contain[ed] far more than a resume." Am. Compl. Ex. 1 at 30–31. He thus contends that the process was unfair because it was based entirely on a review of a resume or the opinion of a colleague about the candidate, not a fulsome review of full

16

applications. However problematic he may find the application process, Dr. Rainey has failed to show that the failure to hire or promote him was causally linked to his filing of the EEO complaint or other protected activity, which is necessary to establish a retaliation claim under Title VII. *See Boyer-Liberto*, 786 F.3d at 281. Accordingly, the Court will grant summary judgment to Defendants on Dr. Rainey's retaliation claims.

## VII.    Hostile Work Environment

Dr. Rainey has also asserted a claim of a hostile work environment based on the following incidents: (1) in November or December 2009, race was mentioned in a discussion about a potential transfer to another team; (2) in March 2011, he was falsely accused of cheating on his timesheets; (3) in July 2011, he was reassigned to work assignments not consistent with his expertise and told that "[p]eople have been talking," Am. Compl. Ex. 1 at 21; (4) on multiple occasions, managers have not referred to him as "Dr. Rainey"; (5) in January 2019, during a government shutdown, Trower asked him to run updates on his computer even though he was not permitted to work; (6) on February 22, 2019, Trower discussed with him the bathroom usage of a co-worker in a manner that made him uncomfortable; (7) on September 29, 2019, he was reassigned to a non-bargaining unit position; (8) in October 2019, Trower issued a negative performance evaluation that "slandered" Dr. Rainey's character, *id.* at 22; (9) on November 5, 2019, Davis proposed that Dr. Rainey's telework privileges be revoked due to his lower performance rating; and (10) on November 27, 2019, Trower gave him a low LSR rating, which has also occurred in prior years.

A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d

17

at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To prove such a claim, a plaintiff must show that the offending behavior was (1) unwelcome, (2) based on race, (3) "sufficiently severe or pervasive" to alter the conditions of employment and create "an abusive work environment," and (4) imputable to the employer.  *Id.* (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).  A court's determination whether such an environment exists includes a consideration of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23).  Notably, "'[r]ude treatment,' 'callous behavior,' or 'routine difference of opinion and personality conflict,' without more, will not suffice." *Holloway v. Maryland*, 32 F.4th 293, 301 (4th Cir. 2022) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008)).

Although Dr. Rainey identifies multiple incidents, they are not individually or collectively severe or pervasive within the meaning of Title VII.  These incidents are spread out over more than a decade and involve different managers in different time periods.  As discussed above, the vast majority constitute employment or personnel decisions and do not involve the kind of discriminatory intimidation, ridicule, or insult, or physically threatening or humiliating conduct, that characterizes a hostile work environment.  Moreover, as also discussed above, while Dr. Rainey is apparently insulted by the failure to address him as "Dr. Rainey" while non-Black employees with similar academic credentials are addressed with the title of "Dr.," that conduct does not rise to the level of severe conduct that could support a hostile work environment. Significantly, courts have found more egregious patterns of conduct insufficient to establish a hostile work environment. *See, e.g.*, *id.* at 301 (holding that allegations that a supervisor criticized the plaintiff's leadership and budget management in meetings, scheduled a meeting to start before

the plaintiff was scheduled to arrive and then yelled and slammed documents onto a desk during the meeting, required him to sign a disciplinary evaluation, required him to address the supervisor as "sir," failed to honor him at an employee recognition event, and surveyed other employees about the plaintiff's whereabouts during the work day were insufficient "to establish an abusive environment"); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (finding that allegations of the supervisor mockingly yelling at the plaintiff in a meeting, "yelling and pounding her hands on her desk during another meeting," "repeatedly harp[ing] on a mistake" by the plaintiff, "making snide comments" to the plaintiff, "playing favorites with employees and pitting employees against each other," and "unfairly scrutinizing and criticizing" the plaintiff's use of leave and lack of compliance with directives fall "far short of being severe or pervasive enough to establish an abusive environment"). The Court therefore finds the evidence insufficient to meet the requirement of a severe or pervasive harassment and will grant the Motion as to the hostile work environment claim.

## CONCLUSION

For the foregoing reasons, Dr. Rainey's Motion to Seal, ECF No. 47, will be GRANTED, Defendants' Motion to Unseal for a Limited Purpose, ECF No. 49, will be GRANTED, and Defendants' Motion to Dismiss or for Summary Judgment, ECF No. 37, will be GRANTED. A separate Order shall issue.

Date:   August 7, 2023

THEODORE D. CHUANG
United States District Judge